

MJM: USAO#2016R00470

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | CRIMINAL NO. DKC-19-057 |
| v. | * | (Theft of Public Money, 18 U.S.C. § 641; False Documents, 18 U.S.C. § 1001(a)(3); Aiding & Abetting, 18 U.S.C. § 2; Forfeiture, 18 U.S.C. §§ 981(a)(1)(C), 982(a)(7)) |
| **TANYA SHERRICH THOMAS,** | * | |
| Defendant. | * | |

\*\*\*\*\*\*

## INDICTMENT

## COUNTS ONE THROUGH ~~FOUR~~ THREE
### (Theft of Public Money)

The Grand Jury for the District of Maryland charges that:

### Introduction

At all times relevant to this Indictment,

1.  Defendant **TANYA SHERRICH THOMAS ("THOMAS")** resided Baltimore, Maryland with her two minor sons and, at times, resided with her adult boyfriend, her adult daughter, and one minor grandchild.

2.  Parcel Delivery Express ("PDX"), Rapid Response Delivery ("Rapid Response"), Dreema Delivery Solutions ("Dreema"), and Carter Express were parcel and freight delivery businesses located in Maryland. Snow Enterprises was a real estate management and field service provider located in North Carolina.

### Section 8 Housing Choice Voucher Program

3.  The United States Department of Housing and Urban Development ("HUD") was a department of the United States federal government. HUD provided assistance to low-income families in securing housing in the private market, in part, through the Section 8 Housing Choice Voucher Program ("HCVP"). HCVP was administered locally by public housing agencies.

4. In Baltimore, Maryland, HCVP was administered by the Housing Authority of Baltimore City ("HABC") with federal funds provided by HUD.

5. Initial eligibility for HCVP housing assistance and the amount of a family's housing assistance was determined, in part, by the total income in the household, total household assets, and number of members of the household, facts that are attested to by the adult participants in a certified family declaration.

### Supplemental Security Income

6. Supplemental Security Income ("SSI") was an income supplement funded by the United States Treasury to assist disabled, aged, and blind persons who have little or no income to meet basic needs for food, clothing, and shelter. The program was administered by the United States Social Security Administration ("SSA"). SSA determined initial and continuing eligibility for SSI based upon information provided by the applicant or a representative on the applicant's behalf. Eligibility for SSI was determined, in part, by the income and financial resources available to the applicant.

### Supplemental Nutrition Assistance Programs

7. Congress passed the Food Stamp Act of 1977 in an effort to alleviate hunger and malnutrition. The Food Stamp Act created the program later named the Supplemental Nutrition Assistance Program ("SNAP") in order to provide nutrition assistance to low-income households. SNAP used federal funds to increase the purchasing power of eligible persons, permitting them to obtain a more nutritious diet. SNAP was jointly administered by the Food and Nutrition Service, an agency of the United States Department of Agriculture and the United States federal government, and state agencies.

8. In Maryland, SNAP (also known as the Food Supplement Program) was administered by the Maryland Department of Human Resources ("DHR"), now known as the Maryland Department of Human Services.

9. The Baltimore City Department of Social Services ("BCDSS") assisted low-income residents of Baltimore, Maryland access certain public benefits and accepted applications for SNAP benefits.

10. Eligibility for SNAP benefits was determined, in part, by the income of the applicant's household.

### Foot Soldiers Trucking

11. On or about January 18, 2012, **THOMAS** signed Articles of Organization for a business entity named Foot Soldiers Trucking LLC ("FST"), which were submitted to the Maryland Department of Assessments and Taxation. The Articles of Organization stated that the purpose of the business was to provide hauling and trucking services to the general public. The Articles of Organization further listed **THOMAS** as resident agent and **THOMAS's** residential address, as the principal address for FST.

12. From in or about July 2011 through December 2013, PDX paid FST at least approximately $176,964 for trucking services. PDX made checks payable to FST. **THOMAS** endorsed the checks, beginning in August 2011, and the payments were deposited into bank accounts opened and controlled by **THOMAS** and her adult boyfriend R.D.

13. From in or about December 2013 through December 2014, Rapid Response paid **THOMAS** and FST at least approximately $12,219 for trucking services. **THOMAS** signed an independent contractor agreement with Rapid Response. The payments from Rapid Response were deposited into a bank account opened and controlled by **THOMAS**.

14. From in or about September 2014 through July 2015, Snow Enterprises paid FST at least approximately $22,869 for trucking services. **THOMAS** signed a subcontractor agreement with Snow Enterprises. Snow Enterprises made checks payable to FST and/or **THOMAS**, and the payments were deposited into a bank account opened and controlled by **THOMAS**.

15. From in or about January 2015 through March 2016, Carter Express paid FST at least approximately $58,012 for trucking services. Carter Express made checks payable to FST, and the payments were deposited into a bank account opened and controlled by **THOMAS**.

16. From in or about December 2016 through May 2017, Dreema paid FST at least approximately $27,108. Payments from Dreema were deposited into a bank account opened and controlled by **THOMAS**.

## Applications and Statements to Obtain Public Benefits

17. Between in or about 2010 and 2017, **THOMAS** obtained public benefits on a continual basis on behalf of herself and members of her household. In connection with obtaining public benefits, **THOMAS** falsely reported to various government agencies that she had no business income or failed to report that she had business income as required.

18. **THOMAS** began receiving SSI on behalf of her minor son D.G. in or about December 2010. **THOMAS** did not report any business income or self-employment to SSA until on or about April 14, 2016.

19. On or about April 17, 2012, **THOMAS** submitted a Personal Declaration document to HABC listing child support and SSI as sources of household income. **THOMAS** did not report income from any business or self-employment, and reported no family assets.

20. **THOMAS** signed and submitted a DHR document to BCDSS dated July 16, 2012, listing child support and SSI as sources of her household income. **THOMAS** did not report income from any business or self-employment.

21. **THOMAS** signed and submitted a DHR document to BCDSS dated December 12, 2012, listing child support, SSI, and her adult daughter's earned income as sources of household income. **THOMAS** did not report any income she earned from any business or self-employment.

22. On or about February 11, 2014, **THOMAS** signed and submitted a document to BCDSS reporting that no member of her household was working or had any income other than child support and SSI. **THOMAS** did not report income from any business or self-employment.

23. **THOMAS** signed and submitted a DHR document to BCDSS dated May 16, 2014, listing child support, SSI, and earned income from her adult daughter as sources of household income. **THOMAS** did not report any income she earned from any business or self-employment.

24. On or about July 15, 2014, **THOMAS** signed and submitted a Personal Declaration document to HABC listing child support, SSI, and earned income from her adult daughter as sources of household income. **THOMAS** did not report any income she earned from any business or self-employment, and reported no family assets.

25. On or about May 8, 2015, **THOMAS** provided information to SSA to support of D.G.'s continuing eligibility for SSI. **THOMAS** reported D.G.'s receipt of child support but did not report her business income or earnings, as required.

26. On or about June 3, 2015, **THOMAS** signed and submitted a Personal Declaration document to HABC listing child support and SSI as sources of household income. **THOMAS** did not report income from any business or self-employment, and reported no family assets.

27. On or about July 13, 2015, **THOMAS** signed and submitted documents to BCDSS listing child support and SSI as sources of household income, and reporting that no member of her household was currently working or had worked at any time during the previous six months. **THOMAS** did not report income from any business or self-employment.

28. On or about October 9, 2015, **THOMAS** signed and submitted a Personal Declaration document to HABC listing child support and SSI as sources of household income. **THOMAS** did not report income from any business or self-employment, and reported no family assets.

29. On or about May 2, 2016, **THOMAS** submitted a written statement to HABC concerning her household income that materially omitted her business income and earnings.

30. Between September 2011 and May 2017, HABC provided housing assistance to **THOMAS** totaling at least approximately $83,851.

31. Between September 2011 and February 2016, the United States government provided SSI to **THOMAS** on behalf of D.G. totaling at least approximately $20,472.

32. Between September 2011 and November 2015, **THOMAS** obtained SNAP benefits totaling at least approximately $6,714.

## The Charge

33. From in or about September 2011, continuing through in or about May 2017, in the District of Maryland, the defendant,

**TANYA SHERRICH THOMAS,**

willfully and knowingly did embezzle, steal, purloin, and converted for his use and the use of another, and without authority, sold, conveyed, and disposed of any record, voucher, money, and thing of value of the United States and any department and agency thereof, and any property made or being made under contract for the United States and any department and agency thereof, to wit, the defendant, for her benefit, obtained and/or caused the disbursement of funds belonging to the United States government in the following approximate amounts through materially false representations and omissions regarding her income:

| Count | Amount | U.S. Government Program |
|---|---|---|
| 1 | $83,851 | Section 8 Housing Choice Voucher Program |
| 2 | $20,472 | Supplemental Security Income |
| 3 | $6,714 | Supplemental Nutrition Assistance Program |

18 U.S.C. § 641
18 U.S.C. § 2

## COUNTS FOUR THROUGH NINE
### (False Documents)

The Grand Jury for the District of Maryland further charges that:

1. The allegations set forth in Paragraphs 1 through 32 of Counts One through Three of this Indictment are incorporated by reference here.

2. On or about each of the dates listed below, in the District of Maryland, the defendant,

### TANYA SHERRICH THOMAS,

did willfully and knowingly make and use a false writing and document, knowing the same to contain a materially false, fictitious, and fraudulent statement and entry in a matter within the jurisdiction of the executive branch of the Government of the United States, by submitting to government agencies on or about the following dates, documents that materially misstated and omitted her income in order to obtain federal public benefits:

| Count | Date | U.S. Government Program |
|---|---|---|
| 4 | February 11, 2014 | Supplemental Nutrition Assistance Program |
| 5 | May 16, 2014 | Supplemental Nutrition Assistance Program |
| 6 | July 15, 2014 | Section 8 Housing Choice Voucher Program |
| 7 | June 3, 2015 | Section 8 Housing Choice Voucher Program |
| 8 | July 13, 2015 | Supplemental Nutrition Assistance Program |
| 9 | October 9, 2015 | Section 8 Housing Choice Voucher Program |

18 U.S.C. § 1001(a)(3)
18 U.S.C. § 2

## FORFEITURE ALLEGATION

The Grand Jury for the District of Maryland further charges that:

1. Pursuant to Federal Rule of Criminal Procedure 32.2, notice is hereby given to the defendant that the United States will seek forfeiture as part of any sentence in the event of a conviction on Counts One through Six and Nine of this Indictment; and

2. As a result of the aforementioned offenses, the defendant,

**TANYA SHERRICH THOMAS,**

shall forfeit to the United States of America any property, real or personal, constituting or derived from proceeds traceable to commission of the offense.

3. If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendant,
   a. cannot be located upon the exercise of due diligence;
   b. has been transferred or sold to, or deposited with, a third person;
   c. has been placed beyond the jurisdiction of the Court;
   d. has been substantially diminished in value; or
   e. has been commingled with other property that cannot be subdivided without difficulty;

the United States intends to seek forfeiture of any other property of the defendants up to the value of the above forfeitable property.

18 U.S.C. § 981(a)(1)(C)
18 U.S.C. § 982(a)(7)
28 U.S.C. § 2461(c)

_____
Robert K. Hur
United States Attorney

A TRUE BILL:

**SIGNATURE REDACTED**
Foreperson

February 6, 2019
Date